**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GCDC LLC d/b/a/ GCDC GRILLED CHEESE BAR, individually, and on behalf of others similarly situated,<br><br>    *Plaintiff*,<br><br>  v.<br><br>SENTINEL INSURANCE COMPANY, LTD,<br><br>    *Defendant*. | Civil Action No. 20-1094 (TJK) |

## MEMORANDUM OPINION

Plaintiff GCDC LLC is a restaurant that specializes in grilled cheese sandwiches. Like many other restaurants in the District of Columbia and across the country, Plaintiff's business took a downturn in the spring of 2020 as COVID-19 spread throughout the United States. To comply with local governmental orders issued to stop transmission of the virus, Plaintiff had to modify its floorplan to keep diners spread far apart, and later halt all indoor dining. Eventually, Plaintiff closed its doors with plans to reopen. Plaintiff reached out to its insurance provider, Defendant Sentinel Insurance Company, Ltd., seeking coverage for the restaurant's lost income, but Defendant denied the claim. Plaintiff thus filed this putative class action seeking a (1) a declaration that it and similar situated restaurants' income losses are covered by Defendant's insurance policy, (2) a judgment that Defendant breached its contracts with Plaintiff and members of the putative class, and (3) a judgment that Defendant breached the implied covenant of good faith and fair dealing.[1] Defendant moved to dismiss under Federal Rule of Civil

---

[1] Plaintiff originally sued Hartford Financial Services Group, Inc. as well, but the parties filed a stipulation in July 2020 dismissing Hartford from this case. *See* ECF No. 8.

Procedure 12(b)(6), arguing that an exclusion provision in the policy precludes coverage here. For the reasons below, the Court will grant the motion and dismiss Plaintiff's complaint with prejudice.

## I.     Legal Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The Court accepts "well-pleaded factual allegations as true and draw[s] all reasonable inferences from those allegations in the plaintiff's favor."  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).  Still, "a complaint must have 'facial plausibility,' meaning it must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  If a named plaintiff's claims fail as a matter of law, the putative class action complaint should be dismissed in its entirety.  *See Agnew v. Gov't of Dist. of Columbia*, 263 F. Supp. 3d 89, 98 n. 7 (D.D.C. 2017) (dismissing class action claim since named plaintiff's complaint was dismissed for failure to state a claim); *see also Parrish v. Arvest Bank*, 717 F. App'x 756, 760 (10th Cir. 2017) ("A putative class action complaint should be dismissed if the named plaintiff's individual claims fail to state a claim for relief.").

Although a court seldom considers "matters beyond the pleadings for a motion to dismiss, it may consider . . . documents attached as exhibits or incorporated by reference in the complaint," as well as "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Xiaobing Liu v. Blinken*, No. 21-cv-629 (TJK), 2021 WL 2514692, at *3 (D.D.C.

June 18, 2021) (quoting *Feng Wang v. Pompeo*, No. 18-cv-1732 (TSC), 2020 WL 1451598, at *3 (D.D.C. Mar. 25, 2020)).  Thus, because Plaintiff's complaint "refers to" the "insurance policy, the Court may consider the associated policy documents that" Defendant "has attached to the motion to dismiss." *Gebretsadike v. Travelers Home & Marine Ins. Co.*, 103 F. Supp. 3d 78, 82 (D.D.C. 2015).

## II.     Analysis

This case boils down to one question:  can Plaintiff state a claim for coverage under Defendant's insurance policy?  "Because an insurance policy is a contract, it is governed by principles of contract law."  *Tolson v. The Hartford Fin. Servs. Grp., Inc.*, 278 F. Supp. 3d 27, 33 (D.D.C. 2017) (citing *Stevens v. United Gen. Title Ins. Co.*, 801 A.2d 61, 66 (D.C. 2002)).  Under District of Columbia law, "the text of an insurance contract controls if it is unambiguous." *Whiting v. AARP*, 701 F. Supp. 2d 21, 26 (D.D.C. 2010).[2]  If the relevant provisions are in fact ambiguous, then "the correct interpretation becomes a question for a factfinder."  *Carlyle Inv. Mgmt. L.L.C. v. Ace Am. Ins. Co.*, 131 A.3d 886, 895 (D.C. 2016) (quoting *Debnam v. Crane Co.*, 976 A.2d 193, 197–98 (D.C. 2009)).  But "a contract is not ambiguous merely because the parties do not agree over its meaning, and courts are enjoined not to create ambiguity where none exists."  *Id.*  The Court must "give the words used in an insurance contract their common, ordinary, and popular meaning," *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1205 (D.C. 1999) (cleaned up), and "interpret the contract 'as a whole, giving reasonable, lawful, and

---

[2] Neither party disputes the application of District of Columbia law.  *See* ECF No. 9-1 at 8 n.4; ECF No. 12 at 14 (applying District of Columbia law); *see also Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 357 F. Supp. 2d 89, 93 (D.D.C. 2004) ("A federal court sitting in diversity will apply the choice of law rules of the forum state or district, and under District of Columbia law, insurance contracts are governed by the substantive law of the state in which the policy is delivered.") (internal citations omitted).

effective meaning to all its terms, and ascertaining the meaning in light of all the circumstances surrounding the parties at the time the contract was made,'" *Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B, 2020 WL 4589206, at *2 (D.C. Super. Aug. 06, 2020) (quoting *Carlyle Inv. Mgmt.*, 131 A.3d at 895). Here, because the plain text of the policy unambiguously bars coverage, Plaintiffs have not stated a claim under it, nor could they do so.

### A.     The Virus Exclusion Bars Coverage

The policy Plaintiff bought says explicitly, "We will not pay for loss or damage caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of 'fungi,' wet rot, dry rot, bacteria or virus." ECF No. 9-2 at 134. And this exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* Meanwhile, the complaint notes that COVID-19 is a virus, ECF No. 1 ¶¶ 14, 16; the District of Columbia issued the orders to slow its "spread," *id.* ¶¶ 14–20; and those orders led to Plaintiff's loss of income, *id.* ¶¶ 31-33. In other words, taking Plaintiff's own allegations as true, Plaintiff's loss was caused "directly or indirectly" by the "[p]resence, growth, proliferation, [or] spread" of a virus. Under the policy, that's the ballgame. Coverage is barred.

This Court is not alone in its reading or application of the exclusion. "Courts around the country have already had occasion to review insurance policies including the same or substantially similar exclusionary language in the context of COVID-19 related business income or business interruption claims. Those courts have almost universally concluded that the applicable virus exclusions unambiguously bar coverage for COVID-19 related claims for lost income." *Hamilton Jewelry, LLC v. Twin City Fire Ins. Co., Inc.*, No. 8:20-cv-02248-PWG, 2021 WL 4214837, at *5 (D. Md. Sept. 16, 2021) (footnote omitted); *see also, e.g.*, *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 483 F. Supp. 3d 1189, 1191 (M.D. Fla. 2020)

(dismissing dental office's claims for business losses caused by COVID-19 governmental orders because "the policy expressly excludes insurer liability for loss or damage caused 'directly or indirectly' by any virus" and plaintiff's "damages resulted from COVID-19, which is clearly a virus"); *Roundin3rd Sports Bar LLC v. Hartford*, No. 2:20-cv-05159-SVW-PLA, 2021 WL 647379, at *8 (C.D. Cal. Jan. 14, 2021) ("the virus exclusion entirely bars . . . coverage" where plaintiff alleged that it closed due to closure orders issued to prevent the spread of COVID-19 since plaintiff's "loss was caused—at least indirectly—by the spread of COVID-19").[3]

Plaintiff's arguments against this widely accepted reading miss the mark. For one, the virus exclusion is not limited to "when a virus has contaminated the covered property." ECF No. 12 at 26 (emphasis removed). That interpretation would always require the virus's "presence," even though "presence" of a virus is only one of the above barred causes of loss. *See Sys. Optics, Inc. v. Twin City Fire Ins. Co.*, No. 5:20-cv-1072, 2021 WL 2075501, at *4–5 (N.D. Ohio May 24, 2021) ("Courts have consistently . . . found, with similar exclusions, that there is no stand-alone 'presence' requirement as the exclusion is not limited to incidents of contamination on the premises.") (collecting cases).

For another, it does not matter that the District of Columbia's orders were the direct cause of Plaintiff's business income losses. ECF No. 12 at 31. "While the government closure orders may have been the final link in the loss sequence chain, there is no question that the coronavirus

---

[3] A few courts have come to the opposite conclusion, but the rationale employed in those cases is unpersuasive. One case in particular, *Urogynecology Specialist of Florida LLC v. Sentinel Ins. Co., Ltd.*, 489 F. Supp. 3d 1297, 1302 (M.D. Fla. 2020), "has been repeatedly rejected by courts interpreting the same virus exclusion." *Cosmetic Laser, Inc. v. Twin City Fire Insurance Company*, No. 3:20-cv-00638 (SRU), 2021 WL 3569110, at *9 (D. Conn. Aug. 11, 2021). The same is true for *Elegant Massage, LLC v. State Farm Mutual Auto. Ins. Co.*, 506 F. Supp. 3d 360, 378–80, (E.D. Va. Dec. 9, 2020). *See Goodwood Brewing, LLC v. United Fire Grp.*, No. 3:20-cv-306-RGJ, 2021 WL 2955913, at *6 n. 3 (W.D. Ky. July 14, 2021) (noting that *Elegant Massage* and other cases like it "have been rejected by numerous courts").

was the first link that set the sequence in motion." *Sys. Optics, Inc.*, 2021 WL 2075501, at *6. Put another way, the "[p]resence, growth, proliferation, spread or any activity of" COVID-19 was still *a* cause, even if "indirect." ECF No. 9-2 at 134.

Besides, governmental orders, standing alone, cannot be a "Covered Cause[] of Loss" under the policy. "Covered Causes of Loss" are "risks of *direct* physical loss," ECF No. 9-2 at 33 (emphasis added), and the District's orders on their own risked no physical loss for Plaintiff's property. "[T]hose orders were governmental edicts that commanded individuals and businesses to take certain actions." *Rose's 1*, 2020 WL 4589206, at *2. It was the intervening actions of individuals and businesses that caused "any direct changes to the properties." *Id.*; *see also Westside Head & Neck v. Hartford Fin. Servs. Grp., Inc.*, --- F. Supp. 3d ----, 2021 WL 1060230, at *5 (C.D. Cal. Mar. 19, 2021) ("Government orders aimed at slowing the spread of a virus do not pose a risk of physical loss or damage."). Indeed, the only way a policyholder could obtain coverage for losses stemming from a governmental order would be if the situation fell under the "Civil Authority" provision's limited "exten[sion]" of insurance. ECF No. 9-2 at 42. Plaintiff (for good reason) does not argue that this narrow provision applies here. ECF No. 12 at 16; *see* ECF No. 9-2 at 42 (extending coverage for "Civil Authority" only "when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'"); *see also, e.g.*, *Moody v. Hartford Fin. Grp., Inc.*, 513 F. Supp. 3d 496, 508 (E.D. Pa. 2021) (denying claim for coverage under similar "Civil Authority" provision).

      **B.**      **The Virus Exclusion Is Enforceable**

Plaintiff makes one last-ditch argument to avoid the virus exclusion—claiming that the above interpretation renders the entire virus exclusion section of the policy unenforceable. Not

so. True, that section includes exceptions to the virus exclusion.[4] But this Court's interpretation does not make "any coverage for viruses under" the exceptions "illusory." ECF No. 12 at 35. The District of Columbia "define[s] 'illusory' policies far more restrictively" than some jurisdictions. *Essex Ins. Co. v. Café Dupont, LLC*, 674 F. Supp. 2d 166, 174 n. 10 (D.D.C. 2009). "A court will not strike a provision unless it is 'unconscionable' and renders the coverage 'non-existent or *de minimis*.'" *Id.* Although coverage for fungi, wet rot, dry rot, bacteria, or viruses is admittedly "[l]imited," ECF No. 9-2 at 135, limited coverage is not necessarily "non-existent or de minimis." *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1131 (D.C. 2001). In fact, "[e]ven if . . . [a] provision excludes conduct that one might normally expect to be covered, it does not render the coverage *de minimis*, and would not be unconscionable under District law." *Essex Ins.*, 674 F. Supp. 2d at 174 n.10.

Moreover, the exceptions here are not as limited as Plaintiff tries to make them seem. The exceptions "appl[y] to multiple perils—fungi, wet rot, dry rot, bacteria, *and* virus." *Westside Head & Neck*, 2021 WL 1060230, at *5. There are also "multiple specified causes of loss. There is no requirement that each peril potentially be the result of each and every specified cause of loss. Nor is there any requirement that every specified cause of loss must result in a peril set out in the additional Limited Coverage." *Id.* (rejecting argument that the exception to

---

[4] There are three avenues for coverage when certain perils, including viruses, are involved. First, if fungi, wet rot, dry rot, bacteria, or virus "results from fire or lightning," then the exclusion "does not apply." ECF No. 9-2 at 134. Second, if those same perils result from a "'specified cause of loss' other than fire or lightning," or a certain "equipment breakdown accident," then Defendant will "pay for the loss or damage" caused by the perils. *Id.* at 135 (cleaned up). Third, if those perils "result[] in in a 'specified cause of loss' to Covered Property," Defendant "will pay for the loss or damage caused by that 'specified cause of loss.'" *Id.* at 134. The "specified cause[s] of loss" are "[f]ire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." *Id.* at 56 (cleaned up).

the virus exclusion is "illusory"). If one of the perils "results in a 'specified cause of loss,'" then the policyholder's loss is covered. ECF No. 9-2 at 134. And the same is true for the reverse: If one of the "specified cause[s] of loss" leads to one of the perils, then that loss is also covered. *Id.* at 135.[5] Such coverage is not "impossible to understand." ECF No. 12 at 37. Nor is it "impossible to see how" it may arise. *Id.* at 36. In fact, there is "a case where insured property was damaged due to a virus" caused by one of the specified causes of loss. *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 549, 563 (E.D. Pa. 2021) (citing *Curtis O. Griess & Sons, Inc. v. Farm Bureau Ins. Co. of Nebraska*, where "a windstorm caused insured livestock to become infected with the pseudorabies virus"). In short, even with this Court's interpretation of the virus exclusion, the limited coverage provided for fungi, wet rot, dry rot, bacteria, and virus is not *de minimis*, and it certainly is not non-existent. The virus exclusion is thus enforceable.

\*    \*    \*

This Court acknowledges the toll that COVID-19 and related governmental orders placed on Plaintiff and the business community at large. But because coverage is explicitly barred by the contract here, Defendant could not breach that contract by denying coverage. Nor could denying coverage in that instance breach the implied covenant of good faith and fair dealing. *See Silver v. Am. Safety Indemnity Co.*, 31 F. Supp. 3d 140, 148 (D.D.C. 2014). Put simply, the policy precludes coverage for Plaintiff's losses. Thus, Plaintiffs cannot state a claim for relief under the policy.

---

[5] This is true except for "fire or lighting," but as noted above, the "exclusion does not apply" when fire or lighting leads to one of the perils. *See* ECF No. 9-2 at 134–35. Coverage is also available if some sort of equipment breakdown creates one of the perils. *See id.* at 135.

**III.     Conclusion**

For all these reasons, the Court will grant Defendant's motion to dismiss Plaintiff's putative class action complaint.  And because granting Plaintiff leave to amend would be futile, the complaint is dismissed with prejudice.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 28, 2021